Multi Electrical Manufacturing Company, Appellant, v. Lipman Construction Company, Appellee.

Gen. No. 41,216.

Opinion filed November 20, 1940.    Rehearing denied December 11, 1940.

WILLIAM CAPESIUS and SUMNER C. PALMER, both of Chicago, for appellant.

EUGENE P. KEALY, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Plaintiff brings this appeal from a judgment entered in the municipal court in a contract case. The cause was tried before the court without a jury which resulted in a judgment in favor of defendant and against plaintiff for costs.

Plaintiff's claim charges that in August, 1937, the defendant appellee was employed by the United States Government to build a garage for the new post office on Canal and Adams streets, Chicago; that it contracted with one J. A. MacLagan to do the electrical lighting and wiring for this garage; that plaintiff appellant was employed by MacLagan to do the electric wiring and informed defendant appellee during the progress of the work that MacLagan was in default in his payments for labor and material furnished to the extent of $2,000 and that unless defendant agreed to pay plaintiff the sum of $2,000 it would not deliver any more electrical units or other equipment to the garage.

Plaintiff's claim further charges that on November 2, 1938, defendant wrote plaintiff agreeing to comply with its request, but failed so to do, and paid out the money from MacLagan's funds for other subcontractors and labor.

As heretofore stated there was a trial by the court and a finding and judgment against plaintiff for costs, hence, this appeal.

No question is raised as to the pleadings.

Plaintiff's theory is: First, that under the pleadings, statement of claim and amended affidavit of defense, the plaintiff should have been awarded a judgment for the full amount sued for, namely, $2,000, without the production of any evidence;

Second, that after the evidence was all produced as shown in this record the court should have awarded judgment to plaintiff for the same sum;

Third, that the evidence is such that a judgment should have been rendered against defendant and in favor of plaintiff.

Defendant's theory of the case is that it, the defendant, had agreed to pay to the plaintiff the sum of $2,000 only out of any moneys that might be due under the subcontract between the defendant and MacLagan to whom the plaintiff sold materials; that thereafter no moneys became due and payable to MacLagan by the defendant for the reason that at the time MacLagan finished his work he had failed to pay material bills of approximately $9,000, which the defendant was obliged to pay; that the defendant thereby paid out on account of its subcontract with MacLagan, in excess of $77,000, which was about $5,000 more than the contract price between MacLagan and the defendant; that the defendant had a right to pay the unpaid material bills of MacLagan by virtue of clause 18 of the subcontract agreement; that the letter of November 2, 1938, given by the defendant to the plaintiff was not an unconditional promise by the defendant to pay the plaintiff the sum of $2,000, but was merely an accommodation by the defendant to pay the plaintiff such sum out of any moneys that might thereafter become due to MacLagan by the defendant.

Defendant further contends that the plaintiff had waived any rights it might have as materialman because it executed waivers of lien on September 10, 1938, and on October 12, 1938, respectively, which waivers resulted in the defendant releasing to MacLagan a payment of $13,000 on September 8, 1938, for work performed during the month of August, and a further payment of $3,500 in October for work done during the month of September.

It appears from the evidence that the defendant construction company entered into a contract with the United States Government to erect a large building known as the United States Post Office Garage at

Adams and Canal streets in Chicago; that the cost of the project was in excess of $1,500,000; that on August 14, 1937, the defendant entered into a subcontract agreement in writing with one J. A. MacLagan to furnish and install the lighting fixtures, conduits and wiring systems for the sum of $72,500. Clause 18 of that contract provided:

"In the event that the Sub-contractor fails to pay and discharge when due, any bills of any kind or nature whatsoever incurred by the said Sub-contractor in the fulfillment of this Sub-contract, which bills in the opinion of the contractor are proper, the Contractor may (at his option, but it is to be specifically understood that the Contractor is not compelled so to do) and is hereby authorized to pay such bills. The sub-contractor hereby specifically appoints the Contractor as his lawful agent and attorney-in-fact to pay and discharge the aforementioned bills and to deduct the amount of such bills from any estimate due or to become due the Sub-contractor, as well as any expense incurred in the payment of said bills, including interest."

It further appears from the evidence that an agreement was entered into by MacLagan to purchase from the plaintiff, certain electrical fixtures required in his subcontract for the sum of approximately $4,500; that MacLagan entered upon the work under his subcontract and received payments from the defendant from time to time upon monthly estimates as the same became due; that towards the end of October, 1938, MacLagan was nearing the completion of his work and had been paid approximately $68,000 by the defendant for work performed under his subcontract; that MacLagan at that time spoke to Mr. Lipman, stating to him that the plaintiff had asked MacLagan to get a letter from the defendant, agreeing to pay the plaintiff the sum of $2,000 out of any money that might become due to MacLagan. When testifying MacLagan stated: .

"I asked Lipman to tell Multi that he would pay to Multi the sum of $2,000 out of any money coming to me. I did not expect Mr. Lipman to guarantee anything outside of what was due me."

It further appears from the evidence that on October 28, 1938, MacLagan wrote a letter to the defendant, in which he stated:

"Kindly hold out of my next payment for the Multi Electrical Company $2,000 which is payment on electrical fixtures used on the garage."

It further appears that a few days later, on October 31, 1938, the plaintiff wrote a letter to the defendant, in which plaintiff stated:

"We have asked and secured permission from MacLagan Electric Company to have you make direct payment to us of the sum of $2,000.00 from payments due him during October. It is understood that Mr. MacLagan has provided you with written permission for the above and we will appreciate receiving from you confirmation and agreement to this understanding so that we may release materials which we are holding."

It further appears that on November 2, 1938, agreeable to this request and in compliance with the request of MacLagan, the defendant wrote a letter which reads as follows:

"November 2, 1938.

"Multi Electrical Mfg. Co.
1840 West 14th Street
Chicago, Illinois

"Gentlemen:
"*Att:* Mr. Leo McDonald
*Re:* U. S. P. O. Garage
MacLagan Electric Co.

"Relative to our telephone conversation relative to the above account, please be advised that we will withhold the sum of Two Thousand Dollars from the

amount to be paid to MacLagan Electric Co. for your account with him.

"Very truly yours,
"Lipman Construction Company,
By William S. Lipman."

It further appears that a few days after this letter had been given, it became necessary for the defendant to advance the sum of $750 to MacLagan to meet his payroll for the week ending November 2, 1938; that from November 7th to November 11th, the defendant learned that MacLagan had failed to pay various bills for materials used by him in the subcontract approximating $10,000. In considering the letter of November 2, 1938, from defendant to plaintiff, wherein defendant agreed to withhold the payment of $2,000, which otherwise would be paid to MacLagan Electric Company, we do not think that this could be otherwise construed than as an agreement to hold this money and make it available for the use of the plaintiff. And, it appearing that the plaintiff acted upon that assurance, we believe the defendant was estopped from taking another position to the injury of the plaintiff. We think the trial court committed error in finding for the defendant under the evidence as set forth in this record. There being no necessity for another trial, the judgment of the municipal court is reversed and judgment is entered here in favor of plaintiff for $2,000 and costs.

*Judgment reversed and judgment here for plaintiff for $2,000 and costs.*

Hebel, P. J., and Burke, J., concur.